UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSÉ LUIS RODRIGUEZ,
    Petitioner,

v().                                                          No. 3:12-cv-42 (SRU)

UNITED STATES OF AMERICA,
    Respondent.

## RULING AND ORDER ON PETITIONER'S
## MOTION TO VACATE, CORRECT OR SET ASIDE SENTENCE

On January 9, 2012, petitioner José Luis Rodriguez, currently imprisoned at Federal Correctional Institution Fort Dix in Fort Dix, New Jersey, timely filed a motion to vacate, set aside, or correct his sentence ("habeas petition"), pursuant to 28 U.S.C. § 2255. After his indictment, a jury convicted Rodriguez of conspiracy to possess with intent to distribute, and conspiracy to distribute, 5 kilograms or more of cocaine and 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. On December 19, 2008, I sentenced Rodriguez to the statutory mandatory-minimum sentence for his crime—120 months' imprisonment. Rodriguez's habeas petition avers that his co-defendant, José Adames, "will provide testimony which is exculpatory" and will demonstrate Rodriguez's actual innocence. Habeas Pet. 1. For the following reasons, Rodriguez's petition is **denied**.

### I.    Standard of Review

Section 2255 provides a prisoner in federal custody a limited opportunity to challenge the legality of the sentence imposed upon him. *United States v. Addonizio*, 442 U.S. 178, 184 (1979). In order to prevail, the petitioner must show either (1) that his sentence was imposed in violation of the U.S. Constitution or the laws of the United States; (2) that the sentencing court

lacked jurisdiction to impose such a sentence; (3) that the sentence exceeded the maximum detention authorized by law; or (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a); *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995); *see also Johnson v. United States*, 313 F.3d 815, 817 (2d Cir. 2002). Collateral relief is only available for a constitutional error that constitutes a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). The petitioner bears the burden of proving, by a preponderance of the evidence, that he is entitled to relief. *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

Section 2255 "may not be employed to relitigate questions which were raised and considered on direct appeal." *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992); *see also Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009) (summary order) (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)). If a petitioner fails to raise an issue upon direct appeal, that issue will be deemed procedurally defaulted and unreviewable, absent a demonstration of ineffective assistance of counsel, an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)); *see also Bousley v. United States*, 523 U.S. 614, 622 (1998); *Massaro v. United States*, 538 U.S. 500, 504 (2003).

The Second Circuit has held that "[a]n independent category of cases" exists regarding circumstances "in which petitioners may suffer miscarriages of justice if they are procedurally barred from filing habeas petitions" when those petitioners "claim that they are actually innocent of the crimes for which they were convicted." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). In the context of a habeas petition,

the phrase "actual innocence" refers to factual innocence, not the alleged legal insufficiency of evidence presented in the underlying criminal proceeding. *Bousley*, 523 U.S. at 623–24 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). Thus, to establish actual innocence, the petitioner must show that, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623–24 (citing *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)); *see also Rosario v. United States*, 164 F.3d 729, 732, 734 (2d Cir. 1998). A petitioner's claim that he is actually innocent is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise" procedurally-defaulted constitutional claim "considered on the merits." *Schlup*, 513 U.S. at 315 (citing *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993)).

Because credible claims of innocence are extremely rare, a petitioner must support his claim "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" before he may take advantage of the "gateway" that his actual-innocence claim provides. *Schlup*, 513 U.S. at 324; *Bousley*, 523 U.S. at 623 (citing *Schlup*, 513 U.S. at 327–28); *see also House v. Bell*, 547 U.S. 518 (2006). Accordingly, a habeas court must determine "whether the new evidence is trustworthy" on the evidence's own merits and in light of the pre-existing evidence in the record. *Schlup*, 513 U.S. at 327–28. Only after a court has determined that the purportedly new evidence is reliable may the court consider the petitioner's claim. *Cf. Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) (citing *Schlup*, 513 U.S. at 327–28). A reviewing court may make its own evaluation of the evidence, including determinations of credibility, and "[o]nly after examining all evidence is the court able to determine whether new evidence truly throws the petitioner's conviction into doubt, or whether it is so overwhelmed by the weight of other evidence that it is

insufficient to raise a question" regarding the petitioner's factual innocence.  *Doe*, 391 F.3d at 162 (citing *Schlup*, 513 U.S. at 328, 330).

A district court is typically required to hold a hearing on the petitioner's claims "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003).  Nevertheless, a petitioner is not automatically entitled to a hearing where the allegations in his habeas petition are "vague, conclusory, or palpably incredible."  In order to warrant a hearing, the habeas petition must set forth "specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief."  *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013) (internal citations omitted); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (the later presentation "of . . . contentions that in the face of the record are wholly incredible" are subject to summary dismissal.); *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (noting that a district court may determine the form of a "hearing," including expanding the record for review, depending on the nature of the claims asserted in a petitioner's motion).

## II. Background

### A. Procedural History

On September 21, 2005, a grand jury returned a superseding indictment charging Rodriguez and twenty-two co-defendants with multiple criminal violations, including conspiracy to possess with intent to distribute, and conspiracy to distribute, cocaine and crack.  Superseding Indictment, *United States v. Rodriguez*, No. 3:05-cr-58-21 (SRU) (D. Conn.) (doc. 419).  On May 25, 2006, a federal jury convicted Rodriguez of conspiracy to possess with intent to

distribute, and conspiracy to distribute, 5 kilograms or more of cocaine and 50 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  Verdict (*Rodriguez*, doc. 673).  Rodriguez then moved for acquittal, or in the alternative, for a new trial, which I denied on the merits.  Def.'s Mot. for Dismissal or Judgment of Acquittal (*Rodriguez*, docs. 657, 661); Order & Ruling *denying* Def.'s Mot. for New Trial/Acquittal (*Rodriguez*, doc. 1189).[1]  On December 19, 2008, I sentenced Rodriguez to the statutory mandatory-minimum sentence for a violation of 21 U.S.C. § 841(b)(1)(A)—120 months' imprisonment.  Judgment, (*Rodriguez*, doc. 1272).

Rodriguez appealed directly to the Second Circuit, which upheld my determinations in substantial part and affirmed Rodriguez's conviction and sentence.  *United States v. Arcadio Ramirez*, 609 F.3d 495 (2d Cir. 2010).  After the Second Circuit's ruling, Rodriguez petitioned the U.S. Supreme Court, which denied his petition for a writ of certiorari on January 10, 2011.  *Rodriguez v. United States*, 131 S. Ct. 956 (2011).  On January 9, 2012—one day before the expiration of the statute of limitations—Rodriguez petitioned the district court to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255.

    B.  <u>Facts from the Underlying Criminal Case, *United States v. Luna*</u>

Rodriguez was alleged to be a member of a conspiracy to transport large quantities of

---

1.  Rodriguez also filed a motion for new trial prior to his sentencing and after I ruled on the merits of his previous motion.  That motion sought to determine the applicability of several newly-determined appellate cases to Rodriguez's conviction, and it also sought to challenge the constitutionality of the mandatory-minimum sentences set forth in 21 U.S.C. § 841(b).  Def.'s Mot. New Trial 1–2, *Rodriguez* (doc. 1268) (citing *Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007); and *United States v. Regalado*, 518 F.3d 143 (2d Cir. 2008)).  I denied Rodriguez's renewed motion on the merits during his sentencing hearing.  Oral ruling *denying* Def.'s Mot. for New Trial, *Rodriguez* (doc. 1271); Sentencing Hr'g Tr. 6:10–12:8 (Dec. 19, 2008) (*Rodriguez*, doc. 1278); *see also United States v. Samas*, 561 F.3d 108, 110 (2d Cir. 2009) ("Nothing in *Kimbrough* [*v. United States*, 552 U.S. 85 (2007)] suggests that the powder to crack cocaine disparity in [21 U.S.C.] § 841(b) is unconstitutional."); *United States v. James*, 307 F. App'x 503, 504 (2d Cir. 2009) (summary order) ("a ten year mandatory minimum sentence in this case is not unconstitutional."); *United States v. Acoff*, 364 F.3d 200, 202–03 (2d Cir. 2011) (holding that the mandatory-minimum sentences set forth in 21 U.S.C. § 841(b) did not violate the Fifth Amendment's equal protection clause), *abrogated on other grounds by Dorsey v. United States*, 132 S. Ct. 2321 (2012), *as recognized in United States v. Highsmith*, 688 F.3d 74, 77 (2d Cir. 2012).

cocaine and crack from Brooklyn, New York to Danbury, Connecticut for distribution in both states. *Ramirez*, 609 F.3d at 497. Rodriguez's co-conspirator, José Adames, was the architect of the trafficking operation and supplied Alex Luna, the lead seller in Danbury, with large, weekly deliveries of cocaine for resale. *Id.* From 2002 to 2005, Rodriguez was alleged to have been Adames's driver for many of Adames's deliveries to Danbury. *Id.*

At trial, the government offered testimony from three of Rodriguez's co-conspirators, each of whom testified regarding Rodriguez's involvement with Adames, including Rodriguez's alleged involvement in the cocaine transactions between Adames and Luna. *Id.* at 498. Rodriguez's co-conspirators testified that Rodriguez had delivered cocaine to Luna by himself and with Adames, and that Rodriguez had received money from Luna in exchange for the cocaine. *Id.* at 501. They also testified that Rodriguez would "retrieve cocaine from the vehicle" that he drove for Adames during those deliveries, and further, that Rodriguez helped Adames cook cocaine into crack. *Id.* His co-conspirators testified that Rodriguez would often "bring down the merchandise" and was often present when Adames handed off the cocaine and when Adames discussed cocaine sales. *Id.* The co-conspirators noted that Rodriguez accompanied Adames on multiple drug deliveries, was aware of secret compartments in two vehicles used to transport cocaine, removed cocaine from those hidden compartments, and "compressed" cocaine at Adames's house. *Id.* at 501–02. Finally, cooperating co-conspirator Maria Robles, Luna's girlfriend, testified that she saw Rodriguez and Adames deliver approximately one kilogram of cocaine to Luna each week. *Id.* at 502. She also testified that Rodrigez and Adames managed Luna's operations in Danbury when she and Luna were on vacation in the Dominican Republic. *Id.*

The government also called Special Agent Rodney George, who testified that after

Rodriguez's arrest and during his transportation from Massachusetts to Connecticut, Rodriguez confessed to his involvement in Adames's drug trafficking operation. *Id.* George testified that Rodriguez had confessed that he had become aware of Adames's drug trafficking, had met Adames's supplier, and had driven Adames to make frequent deliveries to Danbury. *Id.*

The government also offered video surveillance of Rodriguez meeting with Adames and Luna in Danbury. *Id.* at 498. That surveillance showed the three men meeting in a parking lot, surveying their surroundings, and ultimately proceeding into an apartment. *Id.* Although that video did not show any drugs changing hands, the meeting itself followed a phone call in which Luna requested that Adames deliver 200 grams of cocaine. *Id.* at 498, 502.

Testifying on his own behalf, Rodriguez averred that although he had acted as Adames's driver, he had no knowledge that he had transported narcotics and that he had not knowingly entered into the narcotics conspiracy. *Id.* Rodriguez testified that he had served as Adames's driver because he had been without work, and he further testified that his mother had warned him that Adames was involved in drug trafficking and that he had confronted Adames about that rumor. *Id.* Rodriguez stated that although Adames denied that he was involved in the illegal transport and sale of narcotics, Rodriguez distanced himself from Adames. *Id.*

**III. Discussion**

In his petition, Rodriguez asserts that Adames has "come forward and is prepared to testify that Mr. Rodriguez did not know that the visits to Danbury involved illegal drug deliveries." Pet'r's Response Br. 2. He notes that Adames was unavailable to testify during Rodriguez's criminal trial because Adames was also a charged defendant in the conspiracy. *Id.* Rodriguez also avers that "Jose Adames was the one person in a position to refute the claim that

Mr. Rodriguez knew of the illegal activity." *Id.* 4.  Rodriguez alleges that his co-defendants testified against him in anticipation of sentencing reductions in exchange for their cooperation. *Id.*  Rodriguez primarily argues that had a jury heard Adames's testimony, no reasonable juror could have found Rodriguez to be guilty beyond a reasonable doubt of participation in the narcotics conspiracy.  *Id.*

Rodriguez's petition fails to identify credible or reliable new evidence sufficient to overcome the weight of the evidence presented to the jury in his original criminal trial.[2]  As a threshold matter, Rodriguez provides no rationale for why the court should assign greater weight to Adames's proposed testimony than to the testimony of Rodriguez's co-conspirators.  The jury in Rodriguez's criminal trial undoubtedly evaluated Rodriguez's testimony and the testimony of his co-conspirators when it determined that Rodriguez was guilty "beyond a reasonable doubt" of knowingly and voluntarily participating in Adames's narcotics conspiracy.

Indeed, Rodriguez had the opportunity and did raise the issue of his co-conspirators' testimony in his post-conviction motions and upon direct appeal, and at both stages, his argument was rejected on the merits.  Rodriguez's argument that Adames would provide testimony that is so credible that "no reasonable jury" could find him criminally liable fails in light of the government's submission of substantial evidence of Rodriguez's guilt

Further, Rodriguez had the opportunity to cross-examine his co-conspirators and impeach their testimony with respect to any cooperation or plea agreement between those co-conspirators and the government.  The jury weighed that impeachment testimony at trial and issued its verdict based upon its determinations regarding the credibility of Rodriguez and his co-conspirators.

Not only has Rodriguez failed to identify credible or reliable new evidence establishing

---

2.  No hearing regarding Adames's proposed testimony is necessary because, even assuming that Adames would testify that Rodriguez did not know he was transporting drugs, Adames's testimony is cumulative of Rodriguez's trial testimony and would not call the verdict into doubt.

his factual innocence, he has not identified any constitutional error or ground for relief that he defaulted during the litigation and appeal of his criminal conviction and sentence. As noted above, a claim of actual innocence does not, by itself, provide a ground for habeas relief. *Schlup*, 513 U.S. at 315. Instead, a claim of actual innocence is a vehicle, or gateway, by which a petitioner may revive an otherwise barred constitutional basis for seeking habeas relief. Having failed to identify any constitutional basis for relief, Rodriguez has not demonstrated that Adames's proposed testimony would have any bearing on his conviction and sentence.

In light of Rodriguez's failure to identify any credible, reliable new evidence that would establish his factual innocence and reopen an otherwise barred ground for habeas relief, his section 2255 petition is **denied**.

## IV. Conclusion

Rodriguez has failed to identify any credible, reliable new evidence that would establish his factual innocence and reopen an otherwise barred constitutional basis for his petition for habeas relief. Additionally, because he has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue. *See also United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997). The Clerk shall enter judgment and close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 12th day of August 2015.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge